92 So.2d 326

### John William HOLLON

v.

### STATE.

### 7 Div. 409.

Court of Appeals of Alabama.

Jan. 22, 1957.

Chas. Thomason, Anniston, for appellant.

John Patterson, Atty. Gen., and George Young, Asst. Atty. Gen., for the State.

CATES, Judge.

This case presents the question, under our desertion and non-support statute, Code 1940, Title 34, Sections 89–104, incl., as to whether or not abandonment of the wife by the husband is a sine qua non, and if so can his conduct which causes her (without fault on her part) to leave his bed and board be a constructive abandonment of her by him within the meaning of Section 90, which reads, for purposes of our enquiry, as follows:

> "Any husband who shall, *without just cause,* desert or wilfully neglect or refuse or fail to provide for the support and maintenance of his wife; * * * she * * * being then and there in destitute or necessitous circumstances, shall be guilty of a misdemeanor", etc. (Italics supplied.)

Hollon was initially convicted in the Juvenile and Domestic Relations Court of Calhoun County and under Section 95, *supra,* went into the circuit court, whence from a nonjury conviction on February 13, 1956, he appeals to this court.

Hollon did not take the stand nor did he adduce any proof, contenting himself with cross examination and a motion to exclude the State's testimony on the

ground it was insufficient to make out a prima facie case of desertion and non-support.

The undisputed evidence was that in August 1955 Mr. and Mrs. Hollon, together with her eighteen year old daughter by a former marriage, were living at 109 Sixteenth Street, Anniston, Alabama. One evening about six or half past, when Mr. and Mrs. Hollon were out of the house fishing, the stepdaughter found on top of the television set in front of the light a note in the defendant's handwriting, which read:

"Honey please dont let no body see this note or see you read it. When you read it tear it up and flush it down the commode. I have put this off for a long time but now I want to know something for sure. I want to know if you love me or appreciate what I have done for you. I love you and have tried to make you love me by doing what you want me to do. You know I dont get any love from your mother. You and the Babys is all I struggle on for so if you dont love me and appreciate me enough to prove it to me I am going to make some changes. I get so disgusted working and slaving for other people and dont get any loving from anybody till I want to pick up and leave and keep going and that is what I ame to do if I cant get some love from some body. I wish I could get you to love me like I do you. We both could be happyer. I have always stuck to you. I have lied for you time and time to keep you from getting a whipping. I slipped you out to meet other men to have a good time. I have seen you on the job with other men and I still did not tell on you hoping some day I would win your love but seems like you are afrade of me and don't want me near you. I am not going to do anything you dont feel free to do for me. I havent ever let you down on anything and I wonder if you love me. I can make you safe to have a good time when you are out with your boy friends if you will let me but that is up to you. I am only trying to help you injoy life if you will help me a little. I cant write all I want to tell you so the first time you have a chance to come to town by your self call me at the trailway bus station and I will pick you up there and talk it all over with you or either write me an answer. I just hope you dont let me down for you and the Babys are all I am staying here for. Your mother has killed all my love for her. She dont let me love her any more so you see what a miserable life I am living so call me soon or write me soon but I had rather talk with you for I can explain everything much better to you.

"love always
Daddy

"P.S. If you let anybody know about this I will have to go sooner."

On account of this letter, which her daughter showed her, Mrs. Hollon and the daughter moved out on the defendant. This departure occurred September 2, 1955. On September 14, 1955, she made complaint, beginning the proceedings in the juvenile and domestic relations court. She testified that in that twelve day period she had received only $5 by way of support and maintenance from her husband who was then working as a garage mechanic earning on a commission basis from $40 to $100 a week. She was physically unable to work. Before separation she had received $20 a week grocery money, nothing for clothing or medical care. In November 1955 she began receiving an Air Force allotment of $91.30 a month from her son. This was her only income from any other source.

The appellant relies for reversal on the proposition that desertion by the husband is a necessary ingredient of the misdemeanor, citing from Crossley v. State, 25 Ala.App. 284, 145 So. 170, 171:

"To constitute a crime under this statute two elements are required to exist; the act of abandonment, *and* the neglect *and* refusal to maintain and provide for the wife * * *." (Italics supplied.)

The Crossley case went off and was decided on a question of double jeopardy. The construction of the statute which led to the reversal there did not go into wheth-

er or not the words "or" as used in the first clause of Section 90 are to be construed as disjunctive or conjunctive. Therefore the quotation above is obiter dicta.

■ We follow the construction adopted by Judge Bricken in St. John v. State, 22 Ala.App. 115, 113 So. 321:

"In order to secure a conviction under this statute (the marital relation being admitted), the state must offer proof, under the required rules, that is to say, sufficient to show beyond a reasonable doubt and to a moral certainty (1) that the husband did, without just cause, desert his wife, or, without just cause, did willfully neglect or refuse or fail to provide for her support and maintenance; (2) that said wife was then and there in destitute or necessitous circumstances." 22 Ala.App. at page 116, 113 So. at page 323.

If the wife (not at fault) is needy or destitute because the husband, in the absence of good cause, has committed any one or more of (1) wife desertion, (2) wilful neglect in support and maintenance of his wife, (3) refusal to provide for her support and maintenance, or (4) failure to provide for her support and maintenance, there is a violation.

We are fortified in our conclusion by recalling that the 1923 Code, Section 4495 (derived from Section 11 of the original act of February 18, 1919), provided for a liberal interpretation of the desertion and non-support statute. While this mandate presents a paradox in a criminal case where there is a presumption of innocence and the statute as a general rule must be strictly construed, yet, in view of the mischief which arose from the inadequacies of the vagrancy laws to cope with neglect of wife or child, e. g., Code 1940, Title 14, Section 437, subdiv. (8), we are made more certain thereby that the non-support statute defines a crime broader than that in subdiv. (8) of the vagrancy law, and that the Legislature used "or" to separate acts any one of which (with the result of the wife being made needy or destitute) was made punishable.

■ Without retracting or detracting from this view, we could also point out here that Hollon's note to his stepdaughter was good cause for Mrs. Hollon (and her daughter) to leave the house of the defendant. Thus a driving out could be as effective a desertion of a blameless wife as leaving her.

■ The appellant cites St. John v. State, supra, and Dickey v. State, 20 Ala. App. 367, 102 So. 239, as authority for the proposition that it was reversible error to admit the letter above set out. Had the stepdaughter not been living under the defendant's roof at the time, a different question might be presented. The record showed the stepdaughter was repelled by the proposals of the defendant's "love" whatever its nature. Her mother had a parent's role as well as that of a wife. For Mrs. Hollon to have to remain under her husband's roof on pain of losing food, shelter, and clothing is contrary to our notions of marital duty.

The letter created a different set of circumstances from that in Dickey v. State, supra, wherein it was immaterial and prejudicial to admit testimony that defendant had been seen at a bawdy house. In the St. John case it was irrelevant and prejudicial to show an intimacy between defendant and another woman before separation of husband and wife. However, it was held relevant (as to whether or not the husband abandoned the wife with good cause) to admit testimony that he caught her cohabiting with his brother, Crossley v. State, supra. Here the note had a relevancy as to the wife's good cause in leaving home, i. e., that, though the husband might hold himself ready and able to support her at his abode, his conduct had effectively barred the door. Therefore she would have no duty to remain with him as a condition precedent to his obligation to support her. Alternatively, the note negatived any good cause, which might otherwise have sprung from the wife's leaving home, justifying the husband's failure to support her.

We have carefully reviewed the record and find it free of any error, and accordingly the judgment of the circuit court is

Affirmed.